**Michelle T. Friend**
**Benjamin O. Rechtfertig**
**HEDGER FRIEND, PLLC**
**2800 Central Avenue, Suite C**
**Billings, MT 59102**
**Phone: (406) 896-4100**
**Facsimile: (406) 896-4199**
**mfriend@hedgerlaw.com**
**brechtfertig@hedgerlaw.com**

**Attorneys for BNSF Railway Company**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | | |
|---|---|---|
| **BNSF RAILWAY COMPANY,** a Delaware Corporation, | ) ) ) | **Cause No. 6:23-cv-00043-BMM** |
| Plaintiff, | ) ) | **BNSF'S BRIEF IN SUPPORT OF ITS** |
| vs. | ) ) | **MOTION FOR JUDGMENT ON THE PLEADINGS OR ALTERNATIVELY,** |
| | ) | **SUMMARY JUDGMENT, AND** |
| **SARAH SWANSON, in her official** capacity as Commissioner of Montana Department of Labor & Industry, | ) ) ) ) | **REQUEST FOR INJUNTIVE RELIEF** |
| Defendant. | ) ) ) | |

BNSF Railway Company submits the following Brief in Support of its Motion

for Judgment on the Pleadings or Alternatively, Summary Judgment, and Request

for Injunctive Relief. Based on the Complaint (Doc. 1) and Defendant's admissions

in its Answer (Doc 14), there are no material issues of fact and BNSF is entitled to judgment as a matter of law either by Rule 12 (c), F.R.Civ.P. judgment on the pleadings or Rule 56, F.R.Civ.P., summary judgment.

There is no dispute that § 49-2-312, MCA's prohibition against discrimination based on vaccination status was preempted under the Supremacy Clause by Executive Order 14042 (Ensuring Adequate COVID Safety Protocols for Federal Contractors). Despite this, BNSF still faces pending claims of discrimination, under the direction of Defendant, based on COVID vaccination status. BNSF is entitled to declaratory judgment and injunctive relief.

## I.    FACTUAL BACKGROUND

The following facts as set forth in BNSF's Complaint for Declaratory Judgment and Injunctive Relief, Defendant's Answer, and Statement of Undisputed Facts (SUF) are undisputed.

### A. The Executive Order and BNSF's Compliance[1]

On September 9, 2021, in the midst of the COVID-19 pandemic, President Biden signed Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors (the "Executive Order"), which directed executive departments and agencies to ensure that federal contractors, such as BNSF was under

---

[1] BNSF's compliance with the Executive Order is presented for background. A determination of whether BNSF complied with the Executive Order does not create any fact issue nor is it necessary for resolution of the constitutional legal issue raised.

the order, complied with all guidance for contractor workplace locations published by the Safer Federal Workforce Task Force ("Task Force"). *SUF ¶ 1.*

The Task Force issued guidance on September 24, 2021. [2] Pursuant to that guidance, all federal contractor employees, regardless of whether they worked on or in connection with a covered contract, were mandated to be fully vaccinated for COVID-19 no later than December 8, 2021, unless they were legally entitled to an accommodation.[3] People were not considered "fully vaccinated" until two weeks after they received the second dose of a two-dose vaccination series, or two weeks after they received a single-dose vaccine. *Id.* at 4. The Task Force further directed that the federal contractor COVID-19 vaccination requirements were "promulgated pursuant to Federal law and supersede[d] any contrary State or local law or ordinance." *Id.* at 13. *SUF ¶ 2.*

During the time in effect, BNSF was a federal contractor as that term was used in Executive Order 14042. *SUF ¶ 5.* On November 8, 2021, BNSF informed its employees that pursuant to the Executive Order, BNSF employees were required to

---

[2] In her Answer, Defendant denied Complaint Paragraphs 11, 15, 16, and 17 as lacking sufficient knowledge to admit or deny the allegations. Again, the denial does not create any material fact issue and is not necessary to determine Supremacy Clause preemption. Moreover, if deemed material, these facts are easily verifiable and should not be subject to dispute or deemed false under Rule 12(c).

[3] The Task Force issued updated guidance on November 10, 2021, extending the deadline to be fully vaccinated to January 18, 2022. *SUF ¶ 3.*

have received their COVID-19 vaccination by January 4, 2022,[4] absent an allowable exemption and also offered a one-time vaccination incentive pay of $300. *SUF ¶ 6.*

On December 7, 2021, the Federal District Court for the Southern District of Georgia issued a nationwide injunction preventing enforcement of the contractor vaccine mandate. *Georgia. et al. v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. Dec. 7, 2021).[5] *SUF ¶ 7.*

On December 8, 2021, immediately after the nationwide injunction took effect, BNSF announced an indefinite pause of its implementation of the federal COVID-19 vaccination mandate. This pause continuously remained in effect until the Executive Order's vaccination requirement was rescinded on May 12, 2023. *SUF ¶ 8.*

### B. BNSF Employees Claim Discrimination Based on Vaccination Status

Nineteen BNSF employees filed administrative complaints with the Department charging that BNSF discriminated against them in employment on the basis of vaccination status under § 49-2-312, MCA. Seventeen of these complaints were withdrawn by the claimants, but two remain. *SUF ¶ 9.*

---

[5] While the nationwide injunction was lifted effective October 18, 2022, per *Georgia, et. al v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022), the OMB instructed federal agencies not to take steps to require contractor compliance with the EO or Task Force Guidance. *SUF ¶ 15.*

BNSF employees Gary Hobbs ("Hobbs") and Scott Linton ("Linton"), have administrative actions currently pending before the Department. Both allege that BNSF discriminated against them on the basis of vaccination status when BNSF: (1) informed them that BNSF was complying with the Executive Order's COVID vaccination mandate, which required them to become vaccinated unless they were legally entitled to an accommodation; and (2) offered a $300 financial incentive for becoming fully vaccinated by the applicable deadline. *SUF ¶¶ 10, 11.*

The Department issued reasonable cause findings of violations of the Montana Human Rights Act, specifically § 49-2-312, MCA on May 5, 2022.[6] BNSF filed motions for summary judgment on September 14, 2022, arguing, in pertinent part, that dismissal of these claims was appropriate because the Executive Order's federal vaccination mandate preempted § 49-2-312, MCA. *SUF ¶¶ 11, 12, 13.*

Soon after the filing of BNSF's motion for summary judgment, the Department concluded in other matters that the Executive Order preempted § 49-2-312, MCA and consequently dismissed the charging parties' complaints in those matters. SUF ¶ 14. The Department similarly repeatedly found that an Occupational Safety and Health Administration Emergency Temporary Standard, 86 Fed. Reg.

---

[6] As with BNSF's compliance with the Executive Order, the reasonable cause findings themselves are not necessary to determine the preemption issue at hand. They are not offered as substantive evidence but merely noted as those findings preceded the contested case hearings for which BNSF seeks injunctive relief.

61402, requiring employers to track employee COVID vaccination status and allowing those employers to take safety precautions to protect against COVID, including by requiring COVID vaccinations, preempted § 49-2-312, MCA. *Id*. The Department also determined that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, preempted § 49-2-312, MCA in a matter involving an employer incentivizing employees to become vaccinated against COVID by charging unvaccinated employees an extra $100 per month for health insurance. *Id*. The Department found federal preemption in at least six cases alleging discrimination based on vaccination status. *Id.*

However, the Montana Human Rights Commission, on March 27, 2023, reversed and remanded the hearing officer's preemption determination in *Chavez v. Cabela's Wholesale, Inc.*, OAH Case No. 102-2023, on the basis that "[c]onstitutional questions, such as federal preemption of state law, are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers." *Id.* (HRB Case No. 0220267) *SUF ¶ 16.*

The Department denied BNSF's motions for summary judgment on April 10, 2023, relying on the Commission's determination in *Chavez* concluding, in pertinent part, that the Department "is without authority to make a determination concerning federal preemption of state law." *SUF ¶ 17.*

Even though the Executive Order has been withdrawn, the Department, through Defendant, is still proceeding with these COVID vaccine discrimination claims. Hobbs and Linton had contested case hearings scheduled shortly before BNSF filed this lawsuit. However, once this action was filed, the cases were stayed, but only pending resolution of this matter. *SUF ¶ 19.*

Defendant Swanson is the current Commissioner of the Montana Department of Labor and Industry (the "Department") located in Helena, Montana, and is charged with the enforcement of § 49-2-312, MCA through the Montana Department of Labor and Industry's Office of Administrative Hearings and Montana Human Rights Commission. She is sued in her official capacity.

## II.    LEGAL STANDARD

A Rule 12 (c) motion for judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999). For purposes of the motion, the allegations of the non-moving party are accepted as true, but those facts denied are assumed to be false.[7] "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and

---

[7] Again, Defendant's lack of knowledge and subsequent denial of easily verifiable allegations in the Complaint, while not material, still should not be subject to dispute or considered false.

that it is entitled to judgment as a matter of law." *Id. Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

If considering matters outside the pleadings, the standard is similar. Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. The party moving for summary judgment has the initial burden of showing that absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-257 (1986). Thereafter, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008).

## III.   ARGUMENT

### A. Defendant Should Not Object to this Motion

Initially, BNSF struggles to understand the basis upon which Defendant objects to this motion. Federal courts have jurisdiction to entertain lawsuits such as this, where are statute or regulation are claimed to be preempted by federal law by virtue of the Supremacy Clause of the United States Constitution. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 642, 648 (2002). Defendant's own hearings officers have found § 49-2-312, MCA, to be preempted by the Executive Order.  This would have likely been the result in this case but for

the Commission's determination that courts must decide constitutional issues and that the Department lacked the authority to rule on preemption issues. *SUF ¶¶ 14, 16.* BNSF gave proper notice to the Attorney General's Office, and they chose not to appear to defend the statute. *See Doc. 2.* Defendant is charged with overseeing the Department investigating discrimination complaints, and the "HRB serves as a neutral entity and does not advocate for either party" per their website. As such, it would be inappropriate for Defendant to defend the constitutionality of § 49-2-312, MCA. Defendant should take no position on the issue of preemption presented in this motion, and it is BNSF's understanding that the Defendant does not.

BNSF believes that Defendant may assert that there must be a hearing and an administrative record before this Court can rule on preemption. This is incorrect. BNSF is not seeking judicial review. This is a declaratory judgment action and petition for injunctive relief. BNSF filed this action specifically to request a ruling from the Court on the issue of preemption, as the Department cannot make that legal determination. It would be unreasonable under the law to require BNSF to proceed through at least two separate administrative hearings regarding this statute and then seek judicial review, when the issue of preemption is ripe for determination and would prevent unnecessary litigation.

Moreover, the exhaustion of administrative remedies doctrine does not apply a declaratory judgment action involving a pure legal question of constitutional

interpretation. *Jarussi v. Bd. of Trustees*, 204 Mont. 131, 135-136, 664 P.2d 316, 318 (1983); *Shoemaker v. Denke*, 2004 MT 11, ¶ 20, 84 P.3d 4; *North Star Development, LLC v. Montana Public Service Commission*, 2022 MT 103, ¶ 16, 510 P.3d 1232. Exhaustion is not required when a lawsuit alleges a constitutional claim which is collateral to a substantive claim of entitlement; colorable; and when resolution would not serve the purposes of exhaustion. *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002) (citation omitted.)

Here, the preemption issue is collateral as it is not intertwined with the merits of the discrimination claim, nor would it interfere with the agency process because it can be resolved exclusive of the individual claims brought under the statute. *Id.* It is colorable because the issue affects BNSF's rights and is not wholly immaterial or frivolous. *Id.* at 981. And, proceeding to a hearing would not serve the purpose of exhaustion. In fact, it would be futile. *Id.* at 982.

There are no material factual matters that need to be determined prior to the constitutional legal issue presented in this lawsuit. BNSF challenged the constitutionality of § 49-2-312, MCA, under the Supremacy Clause, Article VI, Paragraph 2 of the United States Constitution ("Supremacy Clause") as applied in this case. BNSF seeks ruling on whether the COVID vaccination requirements found in Executive Order 14042 (Ensuring Adequate COVID Safety Protocols for Federal Contractors), while in effect, preempted § 49-2-312's prohibition against

discrimination based on vaccination status. If § 49-2-312, MCA, is preempted by federal law, then there can be no cause of action stemming from Montana's statute. Whether BNSF offered any incentive, the timeline of events, or what any of its employees perceived based on BNSF's notification of the requirements of the Executive Order is not relevant or necessary to the determination of federal preemption. If the Court determines that the Executive Order does not preempt § 49-2-312, MCA, then the matter may proceed to an administrative hearing for findings upon which judicial review may be sought. But judicial review is a separate matter entirely from the purely legal question presented here.

### B. Section 49-2-312, MCA, is Preempted Under Federal Law

The Supremacy Clause of the United States Constitution identifies the Constitution and "the Laws of the United States" as "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI cl. 2. To the extent state law prohibits practices that are lawful under federal law, state law is preempted. *Shaw v. Delta Air Lines*, 463 U.S. 85, 108 (1983).

A federal statute can preempt a state statute; a federal statute can preempt a state tort suit; a federal regulation can preempt a state statute; and a federal regulation can preempt a state tort suit. *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330, 131 S.Ct. 1131, 1136 (2011) (internal citations omitted); *Hillsborough Cnty. v.*

*Auto. Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (federal regulations may preempt state law).

Preemption can be express or implied. When there is an express preemption clause, courts focus on the plain wording of the clause to determine preemptive intent. *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016). Preemptive intent may also be implied "if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76-77, (citation omitted); *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, (2000).  If a state statute conflicts with or frustrates federal law, it must cede. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

A Presidential executive order tied to some delegation of legislative authority by Congress has the force of law. *See Mayes v. Biden,* 67 F.4th 921, 939-42 (9th Cir. 2023) (relatedly finding the Contractor Mandate within the Executive Order falls within the President's authority under the Procurement Act) (*vacated* as moot 89 F.4th 1186, 1188 (9th Cir. 2023.))  Here, based on the findings in *Mayes¸* Executive Order 14042 has the force and effect of law.

Montana's statute at issue, § 49-2-312(1), MCA states it is "an unlawful discriminatory practice" for:

(a) a person . . . to refuse, withhold from, or deny to a person any . . . employment opportunities based on the person's vaccination status . . .; [or]

(b) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or a privilege of employment based on the person's vaccination status[.]

The Executive Order requiring federal contractor COVID vaccination, while in effect and at the time of the alleged discrimination, had the force of federal law. The resulting Task Force Guidance was explicitly "promulgated pursuant to Federal law and supersede[d] any contrary State or local law or ordinance." *SUF ¶ 4.* The plain wording of the clause established express preemptive intent, providing a clear basis for federal preemption of § 49-2-312(1)(a) & (b), MCA.

Sections § 49-2-312(1)(a) and (b), MCA prohibiting an employer from mandating that their employees receive the COVID vaccination also directly conflicted with and frustrated the Executive Order requiring such vaccination of federal contractor employees and, as such, is preempted by federal law. By notifying its employees of the requirements of the Executive Order, which had the force of federal law, BNSF was, and still is, subject to state law discrimination claims based on the same action. This duality is the exact reason federal preemption exists and must be enforced.

In fact, so clear is the preemptory effect of the Executive Order that the State of Montana, in its ultimately successful attempt to enjoin the implementation of the

Executive Order, cited this Task Force language as evidence of alleged "irreparable harm" to its "sovereign, quasi-sovereign, and proprietary interests," stating, "[t]herefore, if it is allowed to go into effect, the contractor mandate **will expressly supersede** state statutes, executive orders, regulations, and other policies that oppose vaccine mandates or provide State-level protection to individuals to make their own choices about vaccination." *See* Pls.' Mem. Supt. Mot. Prelim. Inj. at 38, *Missouri, et al. v. Biden*, No. 4:21-cv-01300, E.D. Missouri (Nov. 4, 2021) (emphasis added), *SUF ¶ 20*. The State specifically called out § 49-2-312(1)(b), MCA, the statutory provision at issue in this matter, arguing, "[t]he contractor vaccine mandate also ostensibly preempts a recently enacted Montana statute that generally forbids employers in that State 'to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status.'" *Id*. at 39 (quoting § 49-2-312(1)(b)).

Section 49-2-312, MCA, as applied in this case, is clearly and expressly preempted by federal law. Defendant's Department repeatedly recognized that claims based upon the state statute were preempted and dismissed a multitude of cases on those grounds. BNSF requests the Court rule the same and grant its declaratory judgment petition.

**C. BNSF is Entitled to Injunctive Relief.**

BNSF also seeks injunctive relief to prevent the Department from holding contested case hearings, including the currently pending Hobbs and Linton matters, or from enforcement of § 49-2-312, MCA, against it related to Executive Order 14042.

> To be granted a permanent injunction, a plaintiff must show:
>
> (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction."

*Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (quotations omitted); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008); *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546, n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") The first factor of actual or likelihood of success is the most important factor in a determination on injunctive relief. *Velazquez-Hernandez v. U.S. Immigr. & Customs Enf't*, 500 F. Supp. 3d 1132, 1141 (S.D. Cal. 2020).

In an express preemption case, however, success on the merits carries with it a determination that the other requirements have been satisfied. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (quotations omitted); *see also Texas*

*Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010).  Because § 49-2-312, MCA, is preempted, this alone is sufficient to merit injunctive relief.

However, BNSF easily meets the remaining factors as well. "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Assoc. Gen. Contractors v. Coal. For Econ. Equity,* 950 F.2d 1401, 1412 (9th Cir.1991). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). This is so even "when the constitutional injury is structural, such as a Supremacy Clause violation." *United States v. Alaska*, 608 F. Supp. 3d 802, 809 (D. Alaska 2022) (finding irreparable harm would necessarily result from enforcement of an order that was likely preempted and in violation of the Supremacy Clause.)  Additionally, it is "'clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (quotation omitted.)

Here, the Hobbs and Linton contested case hearings are currently pending. They have not been dismissed by the claimants or by Defendant's Department. They have merely been stayed pending this Court's determination on federal preemption.

It is undisputed that absent a finding of preemption, the Department will proceed with these hearings. Thus, if the Court finds Montana's vaccination statute preempted and does not issue an injunction, BNSF will suffer actual harm from having to defend against such action. There is no other remedy available at law other than granting declaratory judgment and injunctive relief, which will prevent BNSF's harm. The equitable remedy of declaratory judgment and injunctive relief is not only warranted, but necessary. This too would serve not only the public's interest but also the Department's in not subjecting parties to actions founded on laws that its own hearings officers have found to be preempted. BNSF is entitled to a permanent injunction enjoining Defendant from further enforcing § 49-2-312, MCA.

## CONCLUSION

BNSF requests the Court grant its declaratory judgment action and find that § 49-2-312, MCA, is preempted by federal law as applied in this case based on Executive Order 14042. BNSF further requests that the Court grant injunctive relief to prevent further discrimination proceedings or enforcement against it under this statute regarding COVID vaccine discrimination complaints, including Hobbs and Linton, while the Executive Order was in effect.

DATED this 27th day of September, 2024.

HEDGER FRIEND, PLLC

By: /s/ Michelle T. Friend
Attorney for BNSF Railway Company

## **CERTIFICATE OF SERVICE**

I, the undersigned, a representative of the law firm of Hedger Friend, PLLC, hereby certify that I served a true and complete copy of the foregoing on the following persons by the following means:

| | |
|---|---|
| _1-2_ | CM/ECF |
| \_\_\_\_\_ | Hand Delivery |
| \_\_\_\_\_ | Mail |
| \_\_\_\_\_ | Overnight Delivery Service |
| \_\_\_\_\_ | Fax |
| \_\_\_\_\_ | E-Mail |

1.    Clerk, U.S. District Court

2.    Graden Marcelle
      Joseph E. Gresham
      Agency Counsel
      Montana Department of Labor and Industry
      P.O. Box 1728
      Helena, MT 59624-1728
      *Graden.marcelle@mt.gov*
      *Joseph.gresham@mt.gov*
      Attorneys for Defendants

DATE:  09/27/2024              /s/ Michelle T. Friend
                               Attorney for BNSF Railway Company