IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>      Plaintiff,<br><br> v.<br><br>SARAH SWANSON, in her official capacity as the Commissioner of Montana Department of Labor & Industry,<br>      Defendant. | Case No. CV-23-43-H-BMM<br><br>ORDER |

# INTRODUCTION

Plaintiff BNSF Railway Company ("BNSF") filed this action for declaratory and injunctive relief. (Doc. 1.) The Montana Department of Labor and Industry ("MT DOL") filed a motion to dismiss based on sovereign immunity. (Doc. 13.) The Court granted MT DOL's motion. (Doc. 20.) BNSF filed a motion for judgment on the pleadings or alternatively, summary judgment. (Doc. 31.) Defendant Swanson, in her official capacity as Commissioner of MT DOL, opposes the motion. (Doc. 44.)

# FACTUAL BACKGROUND

The same Montana law at issue in *Cabela's Wholesale, LLC v. Chavez*, No. CV 23-41-M-DLC-KLD, 2024 U.S. Dist. LEXIS 112936, at *1-2 (D. Mont. May 29, 2024) and *Qlarant Integrity Solutions, LLC v Nicholas Guthneck,* Cause No.

ADV-2023-483 (Mont. First Jud. Dist. March 28, 2024), also forms the basis for the claims here. The Court borrows that factual history here.

The Montana legislature passed House Bill 702, codified at Mont. Code Ann. § 49-2-312, during the 2021 legislative session. The law, which took effect on May 7, 2021, makes it an unlawful discriminatory practice for "an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether the person has an immunity passport." Mont. Code Ann. § 49-2-312(1)(b). *Cabela's Wholesale, LLC*, at *1-2. Mont. Code. Ann. § 49-2-312 became law in May 2021.

The President of the United States implemented Executive Order 14042 ("EO 14042"), entitled "Ensuring Adequate COVID Safety Protocols for Federal Contractors," on September 9, 2021. 86 Fed. Reg. 50985 (Sept. 9, 2021). EO 14042 required federal contractors to comply with all guidance published by the Safer Federal Workforce Task Force ("Task Force"). The Task Force issued "Guidance for Federal Contractors and Subcontractors" on September 24, 2021. The guidance required employees of federal contractors, including employees working remotely from their residences, to obtain COVID-19 vaccinations except in limited circumstances where an employee was legally entitled to an accommodation. The guidance further required covered contractors to comply with the vaccination

mandate by December 8, 2021. *Qlarant Integrity Solutions, LLC v Nicholas Guthneck,* Cause No. ADV-2023-483 (Mont. First Jud. Dist. March 28, 2024).

The Southern District of Georgia issued a nationwide injunction that prevented enforcement of the vaccine mandate on federal contractors. *See Georgia v. Biden*, 574 F. Supp. 3d 1337 (S.D. Ga. Dec. 7, 2021). The Eleventh Circuit lifted the injunction in October 2022, and federal agencies were instructed to avoid taking steps to require contractor compliance with the vaccinate mandate in Executive Order 14042. *Georgia v. President of the United States*, 46 F. 4th 1283 (11th Cir. 2022); OMB Guidance Issued October 19, 2022.

BNSF was considered a federal contractor as defined by the guidance and Executive Order 14042. BNSF notified its employees that they were required to have their COVID-19 vaccination by January 4, 2022, absent an allowable exception. BNSF also offered a $300 incentive ($160-170 after taxes). (Doc. 32 at 3-4; Doc.1-9 at 5.) BNSF paused its implementation of vaccine mandate after the injunction took effect on December 8, 2021. (*Id.*) EO 14042 was rescinded on May 12, 2023, and BNSF no longer required employees to be vaccinated. (*Id.*) BNSF continued to offer the $300 incentive between the time the injunction took effect on December 8, 2021, and when EO 14042 was rescinded on May 12, 2023.

Employees filed nineteen complaints against BNSF with the Montana Human Rights Bureau ("HRB") for discrimination based on vaccine status, seventeen were

3

withdrawn, and two remain. (*Id*.) BNSF employees Gary Hobbs and Scott Linton claim that BNSF discriminated against them when 1) they required vaccination and 2) offered a $300 financial incentive for being vaccinated. (Doc. 32 at 5; Doc. 36-11.) Hobbs and Linton present claims identical to the seventeen that were withdrawn. (Doc. 1-7; Doc. 1-8.)

The HRB completed an investigation into Hobbs's and Linton's claims to address the following issues:

1) Did BNSF discriminate against [the employee] based on his vaccination status in violation of the Montana Human Rights Act (Title 49, Chapter 2, MCA) when he was told that BNSF would be complying with the federal vaccine requirement if he did not comply, he would be contacted for "awareness and education training on the mandate" and could be terminated?

and

2) Did BNSF discriminate against [the employee] based on his vaccination status in violation of the Montana Human Rights Act (Title 49, Chapter 2, MCA) when he was informed that BNSF was offering a $300 incentive for employees that were fully vaccinated by January 4, 2022?

(Doc. 1-9 at 1.)

The HRB hearing officer determined that the threat of termination faced by Hobbs and Linton during the period between November 8, 2021, when BNSF informed employees of its intent to comply with the federal mandate, through December 8, 2021, when the district court enjoined the federal mandate, constituted an adverse act. The HRB hearing officer's determination of an adverse act by BNSF

shifted the burden to BNSF "to prove by preponderance of the evidence an unlawful motive played no role in the challenged action or that the direct evidence of discrimination is not credible and is unworthy of belief." (*Id*. at 5.) (citing *Admin. R. Mont.* 24.9.610(5)).

The HRB hearing officer concluded that whether a federal vaccination mandate takes precedent over state law presents a question for the courts and not the HRB. (*Id*.) The HRB hearing officer found that BNSF was "unable to prove by preponderance of the evidence an unlawful motive played no role in its implementation of COVID-19 vaccination requirement for employees." (*Id*.) The HRB hearing officer applied the same burden of proof standard to the analysis for the $300 incentive payment (*Id*. at 6.) The HRB hearing officer addressed whether the "value of the incentive" proved to be so substantial "as to be coercive." (*Id.*) The HRB's website provided examples of incentives that would not be coercive to include water bottles, and gift cards less than $25. (*Id*.) The HRB hearing officer found the amount of $160-170 in after tax income for a vaccination incentive "enough to be coercive." (*Id*.)

BNSF filed a motion for summary judgment before the HRB hearing officer on the basis that EO 14042 expressly preempted Montana law and that its $300 vaccination incentive payment did not rise to the level of coercion. The HRB hearing officer determined first that the officer lacked the authority "to make a determination

5

concerning federal preemption of state law." (Doc. 1-15 at 3.) The HRB hearing officer denied summary judgment on the $300 incentive payment based on the alleged issue of fact "as to whether the incentive was coercive." (Doc. 1-15 at 4.) The HRB hearing officer relied upon the order issued by the Human Rights Commission in *Chavez v. Cabella's Wholesale, LLC*, HRB Case No. 0220267 (Mar. 27, 2023). The district court reversed the Human Right Commission decision in *Chavez* after the HRB hearing officer made the decision in this case. The district court determined on judicial review that an HRB hearing officer properly could decide the preemption issue. *See Cabela's Wholesale, LLC v. Chavez*, No. CV 23-41-M-DLC-KLD, 2024 U.S. Dist. LEXIS 112936, at *16 (D. Mont. May 29, 2024).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A court should grant a motion for judgment on the pleadings if, "taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005). For purposes of a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Judgment on the pleadings proves proper when the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, 896 F.2d at 1550; *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978-79 (9th Cir. 1999). The same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim governs a Rule 12(c) motion. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). *Sigler v. Gonzalez USAA Cas. Ins. Co.,* No. SACV 22-02325-CJC (JDEx), 2024 U.S. Dist. LEXIS 137751, at *12-13 (C.D. Cal. Feb. 22, 2024).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

### I. Whether the Court may decide federal preemption of Executive Order 14042 over Mont. Code. Ann § 49-2-312.

BNSF argues that this Court should declare that EO 14042 preempted Mont. Code. Ann. § 49-2-312, which prohibits employment discrimination based on vaccination status. (Doc. 32 at 9.) MT DOL, through Swanson, argues that the Court

lacks subject matter jurisdiction to rule on the preemption issues because BNSF has failed to exhaust its administrative remedies. (Doc. 51.)

District courts typically cannot hear cases that originate in administrative proceedings until all administrative remedies have been exhausted. *Flowers v. Bd. of Pers. Appeals*, 465 P.3d 210, 213 (Mont. 2020) (internal citations omitted). A case becomes "ripe" for judicial review when all the issues have been properly raised, argued, or adjudicated throughout the administrative process. *Id.* (internal citations omitted). Ripeness "requires [the court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479, (2001).

An exception to the exhaustion requirement arises when a party asks the court for a declaratory judgment that the "subject the administrative process, requirement or rule is itself unconstitutional and no other effective relief remains available to the challenging party under the administrative process." *N. Star Dev., LLC v. Mont. Pub. Serv. Comm'n'n*, 510 P.3d 1232, 1241 (Mont. 2022) (internal citations omitted). Another exception exists when an "order is based on application of an unconstitutional or fundamentally erroneous principle of law, the challenge of which is neither dependent on, nor otherwise involves, an agency factual determination or exercise of discretion." *Id* (internal citations omitted). If a case involves purely statutory interpretation, would not benefit from further factual development of the

issues, or would not inappropriately interfere with further administrative action, then the issue may be ripe for judicial review. *Whitman*, at 479 (internal citations and quotations omitted).

This case proves ripe for judicial review on the preemption issue. The Court sees no reason why this Court cannot address the legal question of federal preemption. *See* 28 U.S.C. § 2201 (giving courts the authority to declare rights). The HRB hearing officer found reasonable cause for Hobbs's and Linton's claims based only on statutory interpretation of Mont. Code. Ann. § 49-2-312. The HRB hearing officer did not use case law or interpret administrative rules to make that determination and concluded that question properly was decided by the courts. (Doc. 1-9 at 4.) More recent case law development has determined that an HRB hearing officer properly may decide whether a federal executive order preempted state law. *See Cabela's Wholesale, LLC v. Chavez*, No. CV 23-41-M-DLC-KLD, 2024 U.S. Dist. LEXIS 112936, at *1-2 (D. Mont. May 29, 2024) (holding that a HRB hearing officer properly may determine whether a federal executive order preempts state law) and *Qlarant Integrity Solutions, LLC v Nicholas Guthneck,* Cause No. ADV-2023-483 (Mont. First Jud. Dist. March 28, 2024) (holding that express preemption presents a question of statutory interpretation and a HRB hearing officer did not err by dismissing on those grounds).

### A. Declaratory Relief

BNSF seeks declaratory relief that Mont. Code. Ann. § 49-2-312, as applied in this case, is "clearly and expressly preempted by federal law." (Doc. 32 at 14.) The Supremacy Clause puts "Laws of the United States" which shall be made the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. Art. VI cl. 2. Federal laws can preempt state laws either expressly or impliedly. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

A court determines express preemption by looking at the plain language of the statute to evaluate any conflict between state and federal law. *Id*. Implied preemption arises when a federal law does not clearly, by the plain language, preempt state law, but leaves "no room" for the state law to function. *Id*. When the federal interest proves so dominant that enforcement of both federal and state law could not exist, then state law will be preempted. *Id* (internal citations omitted.) A Presidential executive order has the force of federal law and can preempt state law. *See Mayes v. Biden*, 67 F. 4th 921, 939-42 (9th Cir. 2023).

Swanson cites to the Ninth Circuit decision in *Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618 (9th Cir. 2024), to argue that EO 14042 did not preempt Mont. Code. Ann. § 49-2-312 in all situations. The circumstances presented in *Knudsen* differ greatly. Health care providers and Montana residents with compromised immune

systems challenged Mont. Code. Ann. § 49-2-312 on its face as being unconstitutional. *Id*. The plaintiffs alleged that the Americans with Disabilities Act ("ADA") and the Occupational Health and Safety Act ("OSH Act") preempted Mont. Code. Ann. § 49-2-312 because the federal acts required employers to "know about vaccination status" and the Montana law prohibited discrimination based on vaccination status. *Id*. at 622 (quotations added). The district court concluded that the plain language of the ADA and the OSH Act did not expressly preempt application of Mont. Code. Ann. § 49-2-312. The district court determined, however, that the ADA and the OSH Act impliedly preempted the Montana law. The district court permanently enjoined enforcement of Mont. Code. Ann. § 49-2-312 in all heath care settings. *Id*. The Ninth Circuit reversed.

The Ninth Circuit determined that the need to know an employee's vaccination status under the ADA created, at most, a "hypothetical or potential conflict" between the state and federal statutes. *Id*. at 625. The Ninth Circuit agreed with the district court that the ADA and the OSH Act did not expressly preempt Montana law. The Ninth Circuit reversed on the application of implied preemption, because as a facial challenge, it required a careful inquiry across all health care settings and "raised the risk of premature interpretation of statutes on the basis of factually barebones records." *Id*. at 624.

11

By contrast, the district court in *Chavez* determined that a federal vaccine mandate expressly preempted enforcement of the Montana state law set forth at Mont. Code. Ann. § 49-2-312. *Cabela's Wholesale, LLC v. Chavez*, No. CV 23-41-M-DLC-KLD, 2024 U.S. Dist. LEXIS 112936, at *15-16 (D. Mont. May 29, 2024). The district court reviewed a decision of the Montana Human Rights Commission that ordered remand of the employee's claim to a HRB hearing officer. The district court determined that the preemption issue was dispositive. *Chavez*, at *11. The district court reversed the judgment of the Human Rights Commission that the HRB hearing officer lacked the legal authority to review and decide whether a federal executive order preempts Montana law. The district court concluded that a claim of preemption did not present a constitutional issue and properly could be decided by a hearing officer. *Id.* The question of whether federal law preempts state law involves a legal question properly reviewed by either a court or a HRB hearing officer in this context. *Id.*

The same reasoning applies here. The Court agrees with the conclusion in *Chavez* that EO 14042 expressly preempted Mont. Code. Ann. § 49-2-312 during the relevant time periods and that remand to the agency would be futile. BNSF is entitled to declaratory relief that EO 14042 preempted Mont. Code. Ann. § 49-2-312 and supports BNSF's actions in requiring employee vaccinations during the period of September 9, 2021, when the President implemented EO 14042, and December

8, 2021, when the district court enjoined its enforcement, *Georgia v. Biden*, 574 F.Supp.3d at 1357.

### B. Injunctive Relief

BNSF separately seeks injunctive relief "to prevent further discrimination proceedings or enforcement against it under [Mont. Code. Ann. § 49-2-312]." (Doc. 32 at 17.) This request sweeps too broadly. A permanent injunction may be granted if the plaintiff can show 1) actual success on the merits, 2) irreparably injury, 3) remedies available at law are inadequate to compensate the injury, and 4) it is in the public's interest to issue the injunction. *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). To grant declaratory relief on the preemption issue satisfies some of the requirements for injunctive relief. The Court runs the risk, however, of unfairly prejudicing the remaining claims presented by Hobbs and Linton.

BNSF asks the Court to enjoin application of Mont. Conde. Ann. § 49-2-312 against BNSF and its employees in all circumstances. The district courts in *Chavez* and *Qlarant* determined that EO 14042 preempted Mont. Code. Ann. § 49-2-312 in circumstances like those presented in the claims of Hobbs and Linton. The issuance of declaratory relief that EO 14042 preempts Mont. Code. Ann. § 49-2-312 will limit claims by Hobbs and Linton should they continue to pursue them before the HRB. Declaratory relief provides an adequate remedy at this stage. To prevent claims against BNSF for alleged employment discrimination based on other factors not yet

13

determined by the hearing officer falls outside the scope of the Court's power and unnecessarily bars the right to pursue legal remedies.

Swanson argues that Hobbs and Linton still retain potential claims that may be raised at the administrative level related to the $300 incentive payment that BNSF continued to offer after the district court in Georgia had enjoined enforcement of EO 14042 on December 8, 2021. Hobbs and Linton allege that BNSF's continuation of the $300 incentive payment represented an alleged coercive act of employment discrimination by BNSF when EO 14042 was not in effect. Swanson cites to examples of acceptable incentives for employees to receive vaccinations posted on the HRB website. These allegedly acceptable incentives include water bottles and gift cards of less than $25. (Doc. 1-9 at 5.) These incentives seem trivial when considered in context with other employer incentive programs in a variety of contexts.

For example, the district court in *Ne. Illinois Reg'l Commuter Rail Corp. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers Transportation Div.*, 578 F.Supp.3d 985 (N.D. Ill. 2022), addressed acceptable employer incentives in the context of a labor dispute over a vaccine mandate. The union sought to enjoin enforcement of a vaccine requirement and accompanying financial incentives to encourage employees to participate. *Ne. Illinois*, 578 F.Supp.3d at 989. The employer argued that its vaccine incentives compared to similar incentives that it

offered regularly to employees, such as "quarterly 401(k) contributions, flexible spending accounts, tuition reimbursement, and smoking cessation programs." *Id.*, at 995. The union characterized the vaccine incentive program as "additional payments for a condition of employment (namely, getting fully vaccinated)." *Id.* The district court catalogued "numerous incentives surrounding the coronavirus pandemic," including paid time off to employees at work and excused absences for employees exhibiting symptoms and concluded that the dispute appropriately should be characterized as a "minor dispute" within the meaning of the Railway Labor Act and the related union contract and thereby subject to mandatory arbitration. *Id.*, at 996. The district court declined the union's request to enjoin implementation of the vaccination mandate. *Id.*

The Court similarly characterizes the remaining fight over the $300 vaccine incentive payment as a "minor dispute" resolved in the first instance through the administrative process. The Court reluctantly declines to enjoin further proceedings before the HRB presented by Hobbs and Linton relating to their claims that BNSF's $300 vaccination incentive proved to be so substantial "as to be coercive." Any surviving claims by Hobbs and Linton before the HRB may proceed without a remand from the Court. The appropriate remedy would be to declare that EO 14042 preempted Mont. Code. Ann. § 49-2-312 and allow the administrative proceedings to continue with instruction to follow the Court's order.

15

## ORDER

Accordingly, **IT IS ORDERED**

1. Swanson's Motion for Summary Judgment to remand back to the Montana Department of Labor (Doc. 33) is **DENIED.**

2. BNSF's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**. BNSF's request for declaratory relief that EO 14042 preempted Mont. Code. Ann. § 49-2-312 (Doc. 31) is **GRANTED**. BSNF's request for injunctive relief is **DENIED**.

3. The Montana Department of Labor and the Montana Human Rights Bureau are instructed to act according to this Order.

DATED this 30th day of December, 2024.

_____
Brian Morris, Chief District Judge
United States District Court